IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

THE UNITED STATES OF AMERICA,

    PLAINTIFF,

v.

FLORIDA MARINE TRANSPORTERS, LLC,
*in personam*,

    And

THE M/V LOUIS DEVELLE, and its Barges in Tow,
*in rem*,

    DEFENDANTS.

In Admiralty

3:26-cv-48-DJH

## COMPLAINT

Plaintiff United States of America alleges, on information and belief, as follows:

### Nature of Action

1.  This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.  On January 29, 2023, several barges in the tow of the M/V LOUIS DEVELLE, which is owned and operated by Florida Marine Transporters, LLC, allided with and damaged structures that are part of McAlpine Locks and Dam, an Ohio River improvement which the United States Army Corps of Engineers, owns, operates and maintains.

3.  The United States brings this action against the M/V LOUIS DEVELLE, and its barges, *in rem*, and Florida Marine Transporters, LLC, *in personam*, to recover the estimated costs of repairing the damage to McAlpine Locks and Dam.

4.  The United States asserts claims in this case under the Rivers and Harbors Act ("RHA"),

33 U.S.C. §§ 401-476, and under general maritime law.

Jurisdiction and Venue

5.   The United States is a sovereign nation authorized to bring this action pursuant to the original jurisdiction conferred upon this Court by 28 U.S.C. §§ 1333 and 1345.

6.   Venue is proper because McAlpine Locks and Dam is located within this judicial district, a substantial part of the events and omissions giving rise to the claim occurred in this district, and the M/V LOUIS DEVELLE and its tow of barges were located within this district at the time of the incident.

The Parties

7.   The United States is authorized to sue under 28 U.S.C. § 1345 (United States as Plaintiff) and vested with the authority to bring this claim under the RHA, 33 U.S.C. § 413, and the general maritime law.

8.   The United States, through the United States Army Corps of Engineers, owns, operates and maintains McAlpine Locks and Dam, which is located at mile 606.8, on the Kentucky side of the Ohio River.

9.   Upon information and belief, the M/V LOUIS DEVELLE, Official Number 1299327, is a 120-foot towboat that was built in 2019.

10. The M/V LOUIS DEVELLE was owned and operated by Florida Marine Transporters, LLC at the time of the incident at issue in this litigation, and it is currently owned and operated by Florida Marine Transporters, LLC.

11. Florida Marine Transporters, LLC is a Delaware Limited Liability Company, with its headquarters at 2360 5th Street, Mandeville, Louisiana.  The company also has a principal business address and domicile at 160 Green Street, Suite 101, Dover, DE 19904.

12. Florida Marine Transporters, LLC's registered agent is National Registered Agents, Inc., 1209 Orange Street, Wilmington, DE 19801.

<u>Statutory Background</u>

13. The RHA protects the United States' navigable waters by preventing alteration, obstruction, or injury to harbor or river improvements without permission from the Secretary of the Army, at the recommendation of the Chief of Engineers.

14. The RHA prohibits injury to works built by the United States for the preservation or improvement of its navigable waters. 33 U.S.C § 408(a).

<u>McAlpine Locks and Dam</u>

15. The McAlpine Dam controls a 72.9-mile-long navigation pool (the "McAlpine pool"), with two separate dams regulating water levels within the pool.  This pool is part of a major artery of waterborne commerce in the United States, connecting the upper Ohio River with the Mississippi River system.

16. McAlpine's two dams, which are known as the "upper" and "lower" dams, are separated by a concrete fixed weir that is approximately 1.25 miles long.

17. The upper dam is located immediately upstream of the L&I Railroad Bridge and consists of five radial tainter gates (gates 5-9) that are supported by concrete piers.

18. The lower dam is located at the downstream end of Shippingport Island next to the Louisville Gas and Electric Company's ("LG&E") Hydropower Plant and consists of four radial tainter gates (gates 1-4) that are supported by concrete piers.

19. The lower dam tainter gates are each 100 feet wide and 22 feet tall.  These tainter gates,

along with the upper dam tainter gates, are essential dam components that are used by the Corps to regulate water levels in the McAlpine pool in support of commercial navigation on the Ohio River.

20. In addition to the upper and lower dams, there are two lock chambers located at the downstream end of the Portland Channel, which is used by vessels to bypass the lower dam.

21. At the upstream end of the Portland Channel, the Corps has constructed the Vane Dike mooring cell, which protects the downstream dike and provides a location where downbound tows can wait to enter the McAlpine locks.

22. The Corps' Ohio River chart depicts the McAlpine Locks and Dam as follows:



General Allegations

23. On January 29, 2023, the M/V LOUIS DEVELLE was travelling downbound on the Ohio River pushing a tow of fifteen hopper barges loaded with coal.

24. At approximately 0430 Eastern Standard Time, as the M/V LOUIS DEVELLE was approaching the upstream end of the Portland Channel, the tow struck the Vane Dike mooring cell, damaging the cell and causing the tow to break apart.

25. Ten of the barges from the M/V LOUIS DEVELLE's tow floated downriver to the LG&E Hydroelectric Plant and the McAlpine lower dam. Of these ten barges, seven were caught against the LG&E Hydropower intakes and three became pinned against the piers of the McAlpine lower dam. Eventually, one barge became submerged positioned against tainter gate #1 and the gate's sill.

26. The impact of the barges from the M/V LOUIS DEVELLE's tow damaged tainter gates #1 and #3.

27. Below is a photograph showing several of the M/V LOUIS DEVELLE'S barges lodged against the McAlpine lower dam (foreground) and the LG&E Hydropower Plant intakes (background):



Damage to Tainter Gate #1

28. On January 30, 2023, the Corps conducted an initial damage inspection of tainter gate #1. The initial findings were that as a result of the barge allisions: 1) the center of the tainter gate was bowed inward, 2) there was substantially more leakage than normal around the side seals, and 3) the gate could be lowered but not raised.  The Corps determined that one of the M/V LOUIS DEVELLE's barges had ruptured tainter gate #1's skin plate, allowing water inside the gate body and overloading the gate machinery due to the additional weight of the water.

29. Subsequently, the Corps conducted a Hydraulic Steel Structure inspection of tainter gate #1.

30. On May 10, 2024, the Corps issued a report that described in detail the significant damage to tainter gate #1 caused by the M/V LOUIS DEVELLE barge allisions.  Specifically, the center of the gate was bowed inward due to barge impact, causing displacement in the strut arms and yokes.  Additionally, the upstream skin plate had a 15-foot by 10-foot hole in Bay 4, a 6-foot by 5-foot hole in Bay 7, and a 10-foot horizontal dent in Bay 8.

31. Below is a photograph from the Hydraulic Steel Structure inspection showing some of the damage caused to tainter gate #1 by the M/V LOUIS DEVELLE barge allisions:



32. On March 21, 2024, a follow-up inspection was performed to measure the deflections on the tainter gate #1 strut arms. Engineers recommend replacement of both strut arms, as the deflections have rendered them unfit for service.

33. Tainter gate #1 was rendered inoperable as a result of the M/V LOUIS DEVELLE barge allisions and must be replaced.

34. Since the date of the M/V LOUIS DEVELLE barge allisions, tainter gate #1 was removed from service. As of the filing of this complaint, the tainter gate remains out of service.

35. In its current condition, tainter gate #1 poses risks to the lower dam, including operational, economic, and safety risks. Furthermore, failure of another tainter gate at McAlpine Locks and Dam would hinder the Corps' ability to maintain the authorized water levels in the McAlpine pool, which could result in significant economic losses due to adverse impacts to commercial shipping on the United States' inland rivers.

36. Estimated costs to replace tainter gate #1 exceed $29 million.

37. Design work for the replacement of the gate has begun. The work necessary to

accomplish this essential damage repair has not yet commenced due to a lack of available funding.

<u>Damage to Tainter Gate #3</u>

38. The Corps inspected tainter gate #3 on March 21, 2023, and found that the gate had a horizontal skin plate puncture as a result of the M/V LOUIS DEVELLE barge allisions.

39. The puncture on tainter gate #3 is approximately five feet in length.

40. The damage to tainter gate #3 is consistent with the type of damage that would occur if a loaded barge came into contact with the tainter gate.

41. Below is a photograph showing the damage to tainter gate #3:



42. Corps engineers determined that the damage to tainter gate #3 must be repaired, because the skin sheet forms part of the damming surface, which is critical to maintaining the navigable pool.  Furthermore, the puncture site has a high likelihood of corroding over time, which will create further section loss and a larger hole, and the hole itself will allow river debris to flow into

the gate, which could lead to further damage to the skin sheet and/or to the machinery that operates the gates.

43. Estimated costs to repair tainter gate #3 exceed $3 million.

44. This essential design and repair project has not yet commenced due to lack of available funding.

<u>Damage to the Vane Dike Mooring Cell</u>

45. Video footage shows that the M/V LOUIS DEVELLE's allision with the Vane Dike mooring cell caused the cell to rock back and forth due to the force of the impact.

46. On June 27, 2024, Corps engineers inspected the cell and determined that there was an approximately 2-foot-wide breach in its metal casing.  In addition, the cell now leans downriver, which indicates that it has been partially or fully dislodged from its pile-driven foundation.

47. The below picture shows the Vane Dike mooring cell, post-accident:



48. Based on the post-allision condition of the Vane Dike mooring cell, Corps engineers have determined that the damaged cell will have to be removed and replaced with a new cell.

49. Estimated costs to remove and replace the mooring cell exceed $1.2 million.

50. This essential repair project has not yet been commenced due to lack of available

funding.

Count I—The M/V LOUIS DEVELLE, and its Barges, are Strictly Liable, *In Rem*,
Under 33 U.S.C. §§ 408 and 412 for Damage to the McAlpine
Locks and Dam and the Vane Dike mooring cell

51. The United States refers to and incorporates by reference, as though fully set forth herein,

each and every foregoing paragraph of this Complaint.

52. The Ohio River in the vicinity of the McAlpine Locks and Dam is a navigable waterway

of the United States within the meaning of 33 U.S.C. § 408.

53. McAlpine Locks and Dam is a public work built and maintained for the preservation and

improvement of the navigable waters of the United States within the meaning of 33 U.S.C. §

408.

54. The Vane Dike mooring cell is a public work built and maintained for the preservation

and improvement of the navigable waters of the United States within the meaning of 33 U.S.C. §

408.

55. At all material times, the M/V LOUIS DEVELLE and its barges were vessels "used and

employed in violating any of the provisions of sections 407, 408, 409, 414 and 415" within the

meaning of 33 U.S.C. § 412 of the RHA.

56. The M/V LOUIS DEVELLE and its barges, *in rem*, are strictly liable to the United States

under the terms of the RHA for damage caused by allisions with McAlpine Locks and Dam

structures, and the Vane Dike mooring cell, in a final amount to be established at trial, to include

pre-judgment interest, costs and attorneys' fees, as the Court may award. 33 U.S.C. § § 408, 412;

*Hines, Inc. v. United States*, 551 F.2d 717, 724 (6th Cir. 1977); *Chotin Transp., Inc. v. United States*, 819 F.2d 1342, 1351 (6th Cir. 1987).

Count II — Florida Marine Transporters, LLC, is Strictly Liable, *In Personam*,
Under 33 U.S.C. §§ 408 and 412 for Damage to the McAlpine
Locks and Dam and the Vane Dike mooring cell

57. The United States refers to and incorporates by reference, as though fully set forth herein, each and every foregoing paragraph of this Complaint.

58. The Ohio River in the vicinity of the McAlpine Locks and Dam is a navigable waterway of the United States within the meaning of 33 U.S.C. § 408.

59. McAlpine Locks and Dam is a public work built and maintained for the preservation and improvement of the navigable waters of the United States within the meaning of 33 U.S.C. § 408.

60. The Vane Dike mooring cell is a public work built and maintained for the preservation and improvement of the navigable waters of the United States within the meaning of 33 U.S.C. § 408.

61. At all material times, the M/V LOUIS DEVELLE and its barges were vessels "used and employed in violating any of the provisions of sections 407, 408, 409, 414 and 415" within the meaning of 33 U.S.C. § 412 of the RHA.

62. Florida Marine Transporters, LLC, *in personam*, is strictly liable to the United States under the terms of the RHA for damage caused by its vessels' allisions with McAlpine Locks and Dam structures, and the Vane Dike mooring cell, in a final amount to be established at trial, to include pre-judgment interest, costs and attorneys' fees, as the Court may award. 33 U.S.C. § § 408, 412; *Hines, Inc. v. United States*, 551 F.2d 717, 724 (6th Cir. 1977); *Chotin Transp., Inc. v. United States*, 819 F.2d 1342, 1351 (6th Cir. 1987).

Count III—The M/V LOUIS DEVELLE, and its Barges, *In Rem*, and Florida
Marine Transporters, LLC, *In Personam*, are Liable Under
the General Maritime Law, for Negligently Damaging
<u>the McAlpine Locks and Dam and the Vane Dike mooring cell</u>

63. The United States refers to and incorporates by reference, as though fully set forth herein, each and every foregoing paragraph of this Complaint.

64. The M/V LOUIS DEVELLE and/or Florida Marine Transporters, LLC were negligent and/or grossly negligent in failing to navigate, maintain steering, or otherwise prevent the allisions of the M/V LOUIS DEVELLE and its barges with various structures relevant to the operation of McAlpine Locks and Dam structures; in creating and maintaining unsafe conditions; in failing to operate and/or maintain the M/V LOUIS DEVELLE in a safe condition; and in failing to properly hire, train and supervise its crew and/or vessel staff.

65. The M/V LOUIS DEVELLE and its tow of barges, as moving vessels that allided with various stationary objects, are presumptively at fault under the Oregon Rule. *The Oregon,* 158 U.S. 186, 197 (1895); *Arkansas River Co. v. CSX Transportation*, 780 F. Supp. 1138 (W.D. Ky. 1991). Because there is no basis for a finding of fault by the United States or the damaged structures at issue, the M/V LOUIS DEVELLE, its barges, and Florida Marine Transporters, LLC will be unable to rebut the presumption of fault.

66. The allisions on January 29, 2023, and the resulting damages, were directly and proximately caused by the fault, negligence, and/or want of care, on the part of the M/V LOUIS DEVELLE, its barges, and/or Florida Marine Transporters, LLC.

67. As a direct and proximate result of the negligence and/or gross negligence by the M/V LOUIS DEVELLE, its barges, and/or Florida Marine Transporters, LLC, the United States suffered damage to the McAlpine Locks and Dam and the Vane Dike mooring cell that must be

12

repaired.  Accordingly, the United States should be awarded damages in an amount to be proven at trial, to include prejudgment interest, costs and attorneys' fees, as the Court may determine.

WHEREFORE, the United States prays that the Court enter judgment against the M/V LOUIS DEVELLE and its tow of barges, *in rem*, and Florida Marine Transporters, LLC, *in personam*, in the amount of all damages and losses sustained by the United States as a result of the allisions described above, including prejudgment interest, costs, and attorneys' fees.

Dated:  January 22, 2026                    Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

KYLE G. BUMGARNER
United States Attorney for
Western District of Kentucky

WILLIAM F. CAMPBELL
Assistant United States Attorney

*/s/ Orla M. Brady*
MICHAEL W. KERNS
Senior Aviation & Admiralty Counsel
DC Bar No. 469369
MICHELLE T. DELEMARRE
Senior Admiralty Counsel
ORLA M. BRADY
Senior Trial Counsel
DC Bar No. 90002184
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 14271
Washington, DC 20044-4271
Telephone: (202) 616-4100
Fax: (202) 616-4002
Michael.Kerns@usdoj.gov
Michelle.Delemarre@usdoj.gov
Orla.Brady@usdoj.gov

*Attorneys for the United States of America*

<u>VERIFICATION</u>

Based upon information officially furnished to me, I declare under penalty of perjury, in accordance with 28 U.S.C. §1746, that the foregoing is true and correct.  Executed on January 22, 2026.

ORLA BRADY-SCHROEDER

Digitally signed by ORLA BRADY-SCHROEDER
Date: 2026.01.22 10:24:45 -05'00'

Orla M. Brady
Senior Trial Counsel
United States Department of Justice
Civil Division, Torts Branch
Post Office Box 14271
Washington, DC 20044-4271

14